UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br>BRYANT THOMAS,<br><br>            Defendant. | Case No.: 19-CR-5168 JLS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SENTENCING REDUCTION**<br><br>(ECF No. 45) |

Presently before the Court is Defendant Bryant Thomas's Motion for a Sentencing Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Mot.," ECF No. 45). The Government filed an Opposition to the Motion ("Opp'n," ECF No. 47), and Defendant filed a Reply in Support of the Motion ("Reply," ECF No. 48). Defendant has a projected release date of March 3, 2024. Opp'n at 2. For the following reasons, the Court **GRANTS** Defendant's Motion and **REDUCES** his sentence from 60 months to 51 months.

## BACKGROUND

Defendant was convicted of one count of Importation of Methamphetamine in violation of 21 U.S.C. §§ 952 and 960. This Court sentenced Defendant to the mandatory minimum sentence of 60 months, plus a four-year term of supervised release, and recommended the Residential Drug Abuse Program ("RDAP"). Defendant presently is

serving his sentence at the Federal Correctional Institute Hurlong ("FCI Hurlong").  Mot. at 6.  Defendant has served approximately 28 months (47%) of his sentence.

Defendant is 48 years old and has three prior state convictions.  ECF No. 26 at 2, 6–7.  The first two convictions for attempted burglary and robbery (later reduced to grand theft) were too old to score for criminal history.  *Id.*  Defendant's third conviction for terrorist threats resulted in a criminal history score of three.  *Id.* at 7.  The Court did not find Defendant eligible for safety valve relief under 18 U.S.C. § 3553(f) due to his criminal history, which resulted in a guideline range of 70 to 87 months.  After considering the nature and circumstances of the offense, deterrence, sentencing disparity, and the history and characteristics of Defendant, as well as the other § 3553(a) factors, the Court varied 10 months downward from Defendant's guideline range and issued a 60-month mandatory minimum sentence.

## LEGAL STANDARD

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'"  *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)).  However, Congress provided district courts with statutory authority to reduce a previously imposed sentence if "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  Additionally, the court must consider "the factors set forth in Section 3553(a) to the extent that they are applicable."  *Id.*  "For over thirty years, under the original statute, only the [Bureau of Prisons ("]BOP["]] Director could file a § 3582(c)(1)(A) motion for a sentence reduction on a defendant's behalf."  *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021) (per curiam).  After Congress passed the First Step Act in 2018, however, defendants may bring their own motions for compassionate release after exhausting administrative remedies within the Bureau of Prisons.  *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A).

A court may reduce a defendant's term of imprisonment where the court determines that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The applicable

policy statement was last amended before the passage of the First Step Act. *See* United States Sentencing Guidelines (U.S.S.G.) § 1B1.13. Although expressly applying only to motions filed by the BOP director and not motions filed by a defendant, the policy statement "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant." *Aruda*, 993 F.3d at 802. Therefore, a district court may consider Section 1B1.13 of the sentencing guidelines in its exercise of discretion, but it is not bound by Section 1B1.13's definition of extraordinary and compelling reasons. *Id.* at 801–02.

## ANALYSIS

Defendant moves for compassionate release on the grounds that "extraordinary and compelling reasons" justify a sentence reduction. The Court will first examine whether Defendant has satisfied the administrative exhaustion requirement, then whether Defendant has demonstrated that extraordinary and compelling reasons warrant a sentence reduction.

### I. Exhaustion Requirement

A court may reduce a term of imprisonment on a motion from a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Here, Defendant filed an administrative request for compassionate release to the warden at FCI Hurlong on June 27, 2021. Ex. 1 at 2, ECF No. 45-1. The warden rejected Defendant's request on July 15, 2021, *id.* at 2, and Defendant brought the present Motion on August 23, 2021, *see generally* Mot. The Government does not dispute that Defendant has satisfied the administrative exhaustion requirement. Opp'n at 7 n.5. The Court thus finds the threshold requirement of exhaustion of administrative remedies set forth in 18 U.S.C. § 3582(c)(1)(A) is satisfied. Accordingly, the Court next turns to whether Defendant has demonstrated that extraordinary and compelling circumstances warrant a reduction in his sentence.

///

## II. Extraordinary and Compelling Reasons

Defendant argues that the following extraordinary and compelling reasons warrant relief: (1) the disparity between Defendant's sentence and the sentence he would have received today because of *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021); (2) the need for Defendant to care for his ill mother; and (3) the harsh conditions of confinement Defendant has endured because of COVID-19.  Mot. at 11.  The Court will examine these reasons in turn.

### A. *Sentencing Disparity Post-Lopez*

Defendant argues that, under *Lopez*, his single 3-point conviction did not disqualify him from safety valve.  Mot. at 13.  Therefore, the Court was not required to apply the 60-month mandatory minimum, which Defendant argues is significantly disparate from similarly situated defendants.  *See id.* at 17.  The Government responds that the Ninth Circuit decision in *Lopez* is not a retroactive change in the sentencing law.  Opp'n at 16.

The First Step Act expanded eligibility for safety valve relief from mandatory minimum sentences pursuant to 18 U.S.C. § 3553(f).  The new safety valve provision applies unless the offender has

> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
>
> (B) a prior 3-point offense, as determined under the sentencing guidelines; and
>
> (C) a prior 2-point violent offense, as determined under the sentencing guidelines[.]

18 U.S.C. § 3553(f).  Eight months after Defendant was sentenced, the Ninth Circuit held in *Lopez* that the safety valve criteria set forth in § 3553(f)(1) "is unambiguously conjunctive," and a defendant must have all three criteria before § 3553(f)(1) bars a defendant from safety valve relief.  998 F.3d at 433.

If the Court had sentenced Defendant after *Lopez* was decided, the Court would have found Defendant eligible for safety valve.  With safety valve, Defendant's guideline range

would have been 51 to 63 months, and the Court could have departed below the 60-month mandatory minimum sentence. Although Defendant's criminal history is not insignificant, the Court finds that a 60-month sentence is greater than necessary and resulted in a sentencing disparity that can be considered under § 3582.

Two courts in this District have found a disparity between the sentence a defendant received and the sentence that defendant could have received with safety valve after *Lopez* constituted extraordinary and compelling circumstances. *United States v. Wright*, No. 19-CR-4286-GPC, 2022 WL 673265, at \*4 (S.D. Cal. Mar. 7, 2022); *United States v. Vascones*, No. 18CR5176-CAB, 2022 WL 1004236, at \*2 (S.D. Cal. Apr. 4, 2022). The Court joins these courts and finds that "the defendant will not be excluded from relief [he] could otherwise have earned due to what was subsequently determined to be a misapplication of the law by counsel and the court." *Vascones*, 2022 WL 1004236, at \*2.

Accordingly, the Court finds that the change effected by *Lopez* constitutes an extraordinary and compelling circumstance that merits a sentence reduction.

### B.     Need to Care for His Mother

Next, Defendant argues that his need to care for his mother is an extraordinary and compelling circumstance. Mot. at 18–21. Defendant argues that his mother, who is 71 years old, suffers from rheumatoid arthritis and hypertension and struggles with memory issues and incontinence. *Id.* at 20. Presently, Defendant's mother relies on 20 hours per week of in-home assistance provided formally through Social Security Disability Insurance and informally via "the kindness of neighbors" to manage her maladies. *Id.* Defendant states that before he went into custody, he was his mother's caretaker and "help[ed] her with a variety of household tasks." *Id.* Defendant has two siblings, but Defendant argues that "neither is in a position to provide assistance." *Id.* at 9. The Government responds that Defendant has failed to present sufficient evidence that his mother is "incapacitated," or that no other caregivers are available. Opp'n at 17–18.

Although the Court is not bound by the Sentencing Commission's policy statements, *see Aruda*, 993 F.3d at 802, the Court finds it useful in this instance to refer to the

19-CR-5168 JLS

Commission's two categories of family circumstances that constitute "extraordinary and compelling" reasons:

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13, cmt. n.1(C). Incapacitation of a parent is not explicitly contemplated by the Commission's policy statements. Although some courts have found the need to care for an incapacitated parent warrants a sentence reduction, many have not allowed compassionate release in such circumstances. *Compare United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) ("This Court sees no reason to discount this unique role simply because the incapacitated family member is a parent and not a spouse."), *with United States v. Ingram*, No. 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (finding need to care for 93-year old mother in hospice was not an extraordinary and compelling reason for compassionate release as "[m]any, if not all inmates, have aging and sick parents"). The Court need not decide whether to exercise its discretion and expand the familial situations that constitute "extraordinary and compelling" reasons, however, because the Court finds that Defendant has not adequately alleged that his mother's condition constitutes incapacitation, or that he is the only caregiver available.

First, Defendant's mother's medical conditions do not rise to the level of incapacitation. The Court turns to the BOP's definition of incapacitation of a spouse or registered partner for guidance in evaluating Defendant's request. The BOP defines "incapacitation" as "a serious injury, or a debilitating physical illness," such that a person "cannot carry on any self-care and is totally confined to a bed or chair" or "[a] severe cognitive deficit[.]" BOP Program Statement 5050.50. Even if the Court were to expand the qualifying family relationships to include parents, it does not appear to the Court that Defendant's mother is incapacitated per the BOP's definition. Defendant avers that his mother uses a walker and suffers from rheumatoid arthritis and hypertension. Declaration

of Bryant Thomas ("Thomas Decl.") ¶ 15, ECF No. 45-1.  Additionally, Defendant avers his mother "is also developing memory issues" and has incontinence.  *Id.* ¶ 13.  Defendant points to his mother falling in the bathroom and burning herself while cooking as two specific incidents evidencing her need for a caretaker.  *Id.* ¶ 15.  While the Court is sympathetic to Defendant's concern and acknowledges the health difficulties his mother is facing, these conditions do not rise to the level of a "debilitating physical illness." Although Defendant's mother has limited mobility and she "can only be on her feet 20 to 30 minutes at a time," she is not confined to a bed or chair.  *Id.* ¶ 13.  Additionally, although Defendant claims his mother is "developing" memory issues, he does not allege that she suffers a "severe cognitive deficit."  Defendant's family circumstances are insufficient to justify compassionate release.

Second, it is not clear to the Court that Defendant is the only available caregiver. Defendant has two siblings.  Defendant claims that one brother "does not have a good relationship with [his] mom" and the other "lives in Washington State and has a family of his own."  Thomas Decl. ¶ 16.  These reasons are insufficient to evidence that Defendant is the only caregiving available.  Even if the Court were to set this issue aside, it is not clear that Defendant's mother would welcome him back into her home and accept his assistance as a caregiver.  In the presentence report, Defendant stated he is uncertain if his mother will allow him to reside with her upon release.  ECF No. 26 at 9.  Defendant stated that he was "unsure if [his mother is] supportive, due to a lack of communication."  *Id.*  Although, in the present Motion, Defendant has expressed a desire to care for his mother upon release, Defendant has not presented any evidence that his mother requested or desires his help, or that she would allow him to live with her.

Accordingly, the Court finds that Defendant's desire to care for his ailing mother is not an extraordinary or compelling circumstance warranting a sentence reduction.

### C.    *COVID-19 Conditions*

Finally, Defendant argues that the "harsher than normal conditions of confinement" due to the COVID-19 pandemic is an extraordinary and compelling circumstance.  Mot. at

21.  Defendant estimates he has spent 75% of his time in custody in some form of lockdown.  *Id.* at 22.  Defendant claims this has caused him to experience depression and anxiety, including panic attacks.  *Id.*  The Government responds that Defendant's anxiety and depression do not constitute an extraordinary and compelling reason, and that Defendant is fully vaccinated and has no medical condition that is a risk factor for infectious diseases.  Opp'n at 20–21.

The Court agrees with the Government that Defendant has not presented any evidence that his anxiety and depression is "a serious physical or medical condition" that "substantially diminishes" his ability to "provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."  U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).  Therefore, these conditions do not rise to the level of an extraordinary and compelling reason warranting a sentence reduction.  However, Defendant also claims that the harsh conditions he experienced due to the BOP's "modified COVID-19 operating procedures" warrants relief.  Reply at 11.  "[T]he court does not discount the dangers associated with COVID-19 nor the difficulties prisons face in preventing and containing outbreaks."  *United States v. Veletanlic*, No. CR18-0162JLR, 2021 WL 5205706, at *4 (W.D. Wash. Nov. 9, 2021).  The BOP protocols and procedures Defendant complains of are an effort to prevent COVID-19 infections at FCI Hurlong.  *See* Opp'n at 3.  Although the Court acknowledges that Defendant's conditions of confinement have been more challenging than the Court could have predicted due to the COVID-19 pandemic, they do not constitute extraordinary and compelling circumstances.[1]

### D.  Conclusion

The Court finds that the *Lopez* decision, when considered in conjunction with the sentencing factors set forth in 18 U.S.C. § 3553(a), constitutes an extraordinary and

---

[1] If Defendant seeks to challenge the conditions of his confinement, a motion for sentence reduction is not the proper vehicle to address these claims.  Defendant may raise claims related to the conditions of confinement in a federal civil rights action after exhausting all available administrative remedies with the BOP.  *See, e.g.*, *Demille v. Jenkins*, No. 20-04559 EJD (PR), 2020 WL 5944424, at *2 (N.D. Cal. Oct. 7, 2020) (stating civil rights action is the proper method for challenging conditions of confinement).

19-CR-5168 JLS

compelling reason warranting a sentence reduction.   Defendant requests a sentence reduction to 36 months in custody.  After considering the nature and circumstances of the offense, Defendant's history and characteristics, deterrence, and sentencing disparity, the Court reduces Defendant's sentence to 51 months.   The Court finds this sentence is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

## CONCLUSION

The Court finds that extraordinary and compelling reasons exist to warrant a sentence reduction for Defendant.  Accordingly, the Court **GRANTS** Defendant's Motion for compassionate release (ECF No. 45).  The Court **REDUCES** Defendant's sentence from 60 months to 51 months pursuant to 18 U.S.C. § 3582(c).  His term of supervised release and conditions remain the same.

**IT IS SO ORDERED.**

Dated:  May 11, 2022

Hon. Janis L. Sammartino
United States District Judge

19-CR-5168 JLS